A. S. WENDEL v. MALLORY COMMISSION COMPANY, Appellant.

Evidence: CONCLUSION. Although a question may call for
1   the conclusion of a witness, yet its connection and the sense in which it is understood may render it proper.

Agency: INSTRUCTION. In an action to recover cattle where the evi-
2   dence fails to show that plaintiff authorized another as his agent to make sales thereof, but tends to establish the fact that sales were made by the other as the ostensible owner, refusal to submit the question of agency was not error.

Replevin: INSTRUCTION. In an action for replevin of cattle
3   it was not error to refuse an instruction that if plaintiff and another were joint owners a sale by the other would bind the plaintiff, where the court did instruct that if such other had the right to sell under an arrangement with plaintiff he could not recover.

*Appeal from Monona District Court.*—HON. FRANK R. GAYNOR, Judge.

THURSDAY, FEBRUARY 11, 1904.

ACTION in replevin. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*A. L. Beardsley* and *J. A. Prichard* for appellant.

*E. P. Farr* and *McMillan & Kendall* for appellee.

LADD, J.—It appears that Hawley had purchased of Williams in October, 1899, one hundred head of cattle marked with the brand "J," with a bar over the top. He obtained the money to buy from the defendant, securing the payment thereof by a chattel mortgage describing "one hundred (100) head of two and three year old steers, dehorned and branded "O" in the right ear. Average weight of cattle 910 lbs." The cattle so purchased were turned over to Ross for care and feeding. Ross also bought one hundred head of cattle of Hawley September 21, 1899, and, on the same day, to secure the purchase price, executed a mortgage to defendant, describing "one hundred head of one and two year old steers, mostly reds and roans, few blacks; average weight 825. With holes in right ear, to be put on feed of corn at once." But ninety-two head were delivered at the time, but the remaining eight head were furnished a few days later. In February or March, 1900, the defendant took possession of two hundred and one head of cattle in Ross' possession under these mortgages, and proceeded to foreclose them. The plaintiff insists, however, that he is the owner of the fourteen head of them taken by a writ of replevin in this action. The evidence shows that in the spring of 1898 he and Hawley purchased and sold a large number of cattle. According to the plaintiff, he furnished the money to buy and owned the cattle, and Hawley was to have one-half the profits as compensation for his services, and stand all losses. Hawley testified that he purchased four hundred head on their joint account. One hundred head of one and two year olds were sold to one Jacobs, of Emery, S. D., who executed to plaintiff his note for the purchase price, and secured it by a chattel mortgage on the cattle. Hawley guaranteed the payment of this note. All had been marked with plaintiff's brand, a figure "4" on the right hip, with an underbit on the right ear.

As Jacobs was unable to pay, Hawley took the cattle remaining in his possession in the fall of 1899, and shipped them to Sioux City—one car in his own name, and two in that of Jacobs, as consignors, in order to obtain transportation for themselves—to the defendant as consignee. The price offered at the stockyards being unsatisfactory, the plaintiff claims that he agreed with Jacobs to take these cattle at a stipulated amount, to be applied on the note. This left between $300 and $400 unpaid, and, as plaintiff testified, Hawley proposed to take the cattle to his farm near Hornick, where there was plenty of feed, and keep them until they should bring enough to relieve him from the payment of the balance owing on the note. This was agreed to, though with instructions not to sell without his direction, as contended by plaintiff, or to be sold in small bunches to neighboring farmers, as testified by Hawley, who claims the cattle belonged to them jointly. They were disposed of in the latter method, the plaintiff being consulted as to two sales only. While we might have found differently as to seven head, the evidence was such as to preclude any interference on our part with the jury's finding that the fourteen head of cattle replevied from defendant, out of the two hundred and one heretofore mentioned were part of those sold to Jacobs, and subsequently shipped to Hawley's farm.

II. After the plaintiff had stated fully the understanding had with Hawley when the cattle were taken to Hornick, and had recited how sales to Cleveland and Pitman came to be made, he was asked: "Did you authorize Jerome Hawley to sell any of the Jacobs cattle that went to Hornick, aside from the ones sold to Pitman and Cleveland?" This was objected to as calling for a conclusion, but the objection was overruled, and he answered: "No, sir." In the connection asked, the question could have been understood as going no farther than to inquire whether there were any others to whom he had directed sales to be made. As so understood, it was not objectionable.

1. EVIDENCE: conclusion.

III.    The defendant complains of the court's refusal to give the following instruction: "If you find that said Jerom-Hawley had been acting as an agent for said Wendel in the

2. AGENCY;  sale of cattle, or if you find that said Hawley
instruction.  had been selling cattle for said Wendel, and

said Wendel had accepted and approved the acts of said Hawley in selling said cattle; that D. D. Ross, relying upon such agency of said Hawley, purchased of said Hawley certain cattle in which said Wendel had an interest; and you find that such purchase was in the usual and ordinary way, and on the usual and ordinary terms upon which said Hawley had been selling said cattle for said Wendel—you will find that said Ross got good title to said cattle, as against Wendel, and said Wendel is not entitled to retain same, even though he did not receive the purchase money therefor from Hawley." The evidence did not call for the submission of the issue as to Hawley's ostensible authority. True, he and Wendel had handled about four hundred head of cattle— two hundred in the spring of 1898, and another two hundred in the winter following—but all of these had been shipped to South Dakota. The only other deal, aside from the Jacobs cattle, was a sale to Hawley on time; and these, as a witness puts it, "dropped out of sight." It may be that Hawley handled other cattle branded with the figure "4," but there is no evidence that this was done in connection with plaintiff. None of these transactions were known to Ross, save that Hawley at one time in 1899 pointed out certain cattle in which he remarked that he and Wendel were interested. There is nothing in the record to indicate that Ross even supposed he was dealing with Hawley as Wendel's agent. Indeed, the evidence shows that Hawley handled large numbers of cattle, having at times as high as 1,000 head, and that Ross dealt with him solely as owner. But did Wendel so act as to lead Ross, as a reasonable man, to suppose Hawley to be owner? Placing them in Hawley's possession should not be so construed. Wendel allowed him to make sales to Cleveland and Pitman, but mortgages were taken to Wendel from

them in payment of the purchase price. Such sales certainly could not be construed as representing Hawley as owner. The evidence was such as to raise but one issue, aside from the identity of the cattle as those procured of Jacobs, and that was whether Hawley was authorized to sell, and this was fairly submitted to the jury.

IV. The court instructed the jury that plaintiff was not entitled to recover unless he was found to be the absolute and unqualified owner of the cattle, and that he could not recover if it were found "that, under some arrangement between said Hawley and the plaintiff, the said Hawley had a right to sell the same." This covered the second request of defendant, to the effect that if he and Hawley were joint owners, and became such for the purposes of sale, a sale by Hawley in the usual course of business would be binding.

3. REPLEVIN: instruction.

The third request was properly refused, for that there had been no sale where the vender retained possession. The fourth request was rightly refused, because no issue was made by the pleadings or evidence as to the sufficiency of the descriptions in the mortgages. The other errors assigned require no attention.—AFFIRMED.